I'll mess it up. John Masu, your honor. Masu? Yes, sir. Thank you, Mr. Masu. May it please the court. This, this case, this appeals the second time we've been up on this on this case and the issue for today is whether there was clearly established law as of February 2018 that prohibited officers Coburn and McHugh's conduct at that point in time. And you're going to have to, address the Lytle case. Yes, sir. I'm sure so. Yes, and we can get straight into to Lytle. But is it, is it therefore you're, you're identifying error that Judge Kaczmarek and the magistrate committed on remand. You're not saying the original Baker panel of Judge Graves, Judge Willett, and Judge Englehart committed error. Is that correct? That is correct. What we are saying is on remand when the case went back down, Judge Kaczmarek and the magistrate judge Ray found that there was clearly established law that prohibited the conduct here. And they relied solely on Lytle. And in fact, not only did they rely on Lytle, but they parroted the exact general definition of clearly established law in Lytle by saying that officers may not use deadly force against a person who was fleeing from the officer and did not pose a significant threat of harm or immediate danger. That's almost the exact same language as used in Lytle. And as we now know in, in Mullinex and in Calissa, that kind of a general statement of, of definition of clearly established just doesn't cut it anymore. And so, and I think in the, in, in this court, in the Harmon versus City of Arlington case, specifically admonished and, and questioned whether or not Lytle is even still relevant anymore. And in the Harmon case, the court said Lytle v. Baxter County is premised on a similarly broad reading of Garner. As a result, it is dubious whether Lytle lives on after the cases like Mullinex v. Luna, where the Supreme Court rebuked this court for relying on the same overly broad reading of Garner. So you're, just to be clear, your primary argument is Mullinex changed the clearly established law that Lytle said. You accept that Lytle says police can't use lethal force except when they face imminent danger. That's what it said, but your position is Mullinex altered the validity of that law? In a way, yes, your honor. I mean, what, what Lytle did, he said, but- That's what Harmon, we said in 2021, in a footnote, we said it may be dubious. Yes, sir. And in 2019 earlier, Judge Oldham also said, even if it survives Mullinex. But the difficulty with those two cases is those are panels that are ruminating. They're saying maybe Lytle still isn't good law in light of Mullinex, but no panel can overrule another panel. And unless I'm mistaken, no panel on our court or any circuit has ever actually said Mullinex overruled Lytle. Is that correct? That's my understanding. So how could you be asking us to say that Lytle isn't clearly established law? Because it's distinguishable, your honor. The, the facts of Lytle- Okay. So it's not, it's invalid under Mullinex. It's that these officers weren't in a situation where the threat was no longer imminent for them. Correct, your honor. And so when you look at the facts of Lytle, when you, when you look at it under the guidance of Mullinex and Kalisa, when you have, when you see that in order to be clearly established, it must squarely govern the facts of the case. And in this case- Well, I mean, as I understand it, the, the main differences, you, you, you may have some others. The main differences between this and Lytle is that in Lytle, there was, there was not a verbal warning. There was not an acceleration toward an officer who was on foot. And the car in question was several houses away on an open street. That is correct. Those are very distinguishing factors. I don't mean those are the only differences, but you, you may have others. No, correct, your honor. I mean, here in this case, we have a situation where you have a stolen vehicle. The suspects are disobeying commands of the officers. The officers are clear. There's red and, red and blue lights. They have their, their, their guns drawn. There's an officer standing in front of the vehicle. The vehicle that's placed in gear, starts the vehicle that's placed in gear, drives forward and to the left, narrowly missing officer Coburn, who was standing in front. None of those facts are present in Lytle, which makes Lytle not clearly established law that would give these officers notice that their conduct was prohibited. But we, we do face law of the case. The prior panel said the only shots they're still saying, maybe there wasn't justification for lethal force, are the shots that entered in his back. Right. Well, we have what the, what the prior panel did and what judge Casimiro didn't do the first time was, first of all, the prior panel and judge care, Casimiro improperly divided the shots into the first round of shots. That's a separate argument, but I asked you at the outset, are you critiquing the prior panel? And you said, no, I'm not. I'm not. So let me quote from the prior panel. The dash cam footage shows Coburn continuing to fire his weapon at the sedan after it had moved past him and continued toward the highway. How is that after it moves past him? How is there still imminent threat conclusively as a matter of law? Well, I think that goes to the reasonableness prong of qualified immunity. And, and the issue on this appeal is whether or not his actions were clearly established as of February, 2018. I think an important case to look at, it's an unpublished case. I think you were on the panel, Judge Higginson, is the Irwin v. Santiago case and very similar facts. And in that panel, that court said, look, you have a situation where the officers were near the car, similar to this, the car was fleeing, the car almost hits one of the officers. The court in that case said as to reasonableness, there's a fact question, but as, but there was no clearly established law that prohibited the officer's conduct and therefore they're, they're entitled to qualified immunity. And so that's, that's really what we have here is whether or not their, their conduct was unreasonable, there's just no clearly established law. And Irwin v. Santiago said there was no clearly established law in a very similar fact scenario as of June, 2018, which is after February, 2018, when this incident happened. So therefore there could not have been clearly established law as of February, 2018. And so I think Irwin v. Santiago is, is an important reference point because the facts are so similar to this case. There though, if I remember, it's unpublished, but if I remember qualified immunity is granted because it wasn't clear that the car wasn't still aiming at the officers when the shots were fired. Here, it's irrefutable according to Baker one, the panel, looking at the dash cam, the car had already gone past Coburn. He runs after it. And the two shots that are being looked into are ones that were in the back of the decedent. And I think under, under the Supreme Court, your honor, in Barnes v. Felix, that came out last year, when you look at the totality of the circumstances, you got to take the entire 22 second encounter as a whole now. Okay. That again is critiquing the segmentation that the Baker one panel did. I, if Barnes has altered the landscape, then that may be a point for us to consider. But if the landscape is just, is, is, did they shoot him dead after he'd gone by them? No high speed stays, car's just moving slowly out of the gas station. Coburn runs after him, fires twice, kills him in the back. That's not a, that's not, that, that sounds to me opposite to what occurred in Estivus, where there was a continuing threat. And it sounds like what happened in Lytle, no threat. Well, I think, you know, if you look at the first, the first panel, when they separated the shots into the first round of shots and the second round of shots, and the first panel said as to the first round of shots, there's qualified immunity for the officers, but then... Because they're still facing an immediate threat themselves. Yeah. And, and it's, and with regard, it's a, it's a 22 second from the moment the officers stepped out of their vehicle, the entire episode from, from the moment they stepped out until the last shot was fired was 22 seconds. In Irwin v. Santiago was 17 seconds, very similar. And I think you got to look at under Barnes now, under the framework of Barnes, you got to look at the circumstances instead of segmenting out these situations. These officers... Barnes came down after the district court's ruling? Yes. And it came down even after your notice of appeal? Yes, it came down, I think, a month... So if you were right, would we just remand for the district court to consider Barnes in the first instance, or do you want us to render applying Barnes? I think you could render applying Barnes, Your Honor. I think, number one, when you look at the clearly established, clearly established obviously is a legal question for this court to decide. But again, just to repeat, if, if this is your argument, it is not what you said to me at the outset and what you reiterated a few minutes ago. This would be saying that the Baker 1 panel committed legal error when it quote, segmented the incident. Greg, well, obviously Felix, Barnes v. Felix wasn't, wasn't hurting... No, I know, but I just, that's why I asked you twice and twice you said to me, you are not alleging error in the Baker 1 panel. Yeah. But now you are saying Barnes implicates the, the Baker 1 panel. Yeah, I, with regard to the reasonableness aspect of the Baker 1 panel, no, we're not contesting that, but the Baker 1 panel never looked at the clearly established component. That's why it remanded it back down to the trial court. They, they, they segregated... And then the trial court applied Lytle and we've discussed Lytle. Yes. And... Well, and the trial court applied Lytle and the general statement in Lytle, which is what we think is questioned, but when you take Barnes and you overlap Barnes with Molinex and Calissa, I think you got to look at the full 22 second encounter and determine whether or not that encounter, the facts is set forth in that encounter were clearly established at that time. Barnes is a new law and it's important. It was a unanimous Supreme Court opinion with concurrence. But let's apply it because what the court said there was Fifth Circuit, don't just do a little two second, they called it a blinder. Don't take a little snippet. Okay, the cop at that little moment, he's standing on the car, he's already put himself there and he shoots the guy dead. You can't just say, oh, once he was already on the car, therefore he was justified. You've got to look at the whole situation. Fair to say? Yes, sir. Supreme Court reverses us. Yes, sir. Now, let's look at this case. Where did the panel, the original panel, or the match straight, or Kaczmarek, the five judges who have all aligned together in their interpretation of law, where did they ever have a blinder? What did they not look at? I thought they very carefully looked at all 22 seconds in order to say, this is what happened here, they're justified. But once the car's gone by them, you are no longer justified shooting a motorist dead. Well, I think where they went wrong, Your Honor, is they didn't look at, under Barnes, look at what the officers knew prior to the incident, what the officers knew at the time. They knew that we had a felon who has stolen a vehicle, fleeing in the car, almost hits an officer. In the moment of time, the officers are firing their weapons. And yes, the officer runs after and fires two additional shots within seconds of that initial encounter. It wasn't minutes later. It wasn't a long period of time. It was the split second decision that these officers have to make in that instance. And he's got to make a decision whether he can protect himself, to protect the public, etc. Just to be provocative, because Barnes is new law, and it was reversing us. So we definitely don't want to get a mistake about it. I agree with you. Why wouldn't your argument be asking us to commit the same mistake the Supreme Court told us not to? Which is to say, okay, you can freeze frame the early stuff when they are in danger. But then you've got to blind yourself to the moment when all of a sudden the car's passed them. They're no longer in danger. In other words, aren't you asking us to complete commit the same mistake the Supreme Court reversed us from doing? Blind ourselves to the moment when there was no longer an imminent danger. No, I think, I guess that whether or not there's imminent danger, I think is the fact question. That was the question in Irwin v. Santiago. There was a question of whether it was imminent danger, but the court ultimately said there wasn't, under that fact scenario, there wasn't any clearly established law. And I think that's the same case here. I mean, you got to look at whether or not, we're not asking this court to review the reasonableness of the shots, but whether or not the officers were put on notice that their shots were unreasonable or prohibited in this instance. What's hard about the law being clearly established all the way back to 2002, police officers, you may never shoot and kill someone that is not an imminent threat of harm to you or the public. Why hasn't that always been the law? Is there any circuit that says that's not the law? I don't know, Your Honor. I haven't looked at... But that's the question here. The remand was, as to these final shots, were they still facing imminent threat? Really bright line rule, police across America have been told, and so I'm asking you, is there any circuit anywhere that's ever said that's not the rule? I don't know. Okay, but then, if you can't say that's not the rule, then it sounds like the lighter rule, if I've described it correctly, was accurately applied to these police. But I think Lytle states it in a very general term, and I think... So it's flawed under Mullinex? Correct, correct. Mullinex and Calissa. Our court, even Edith Jones, who was in the original, has said, oh no, actually, Lytle makes sense when the danger is passed. But when you look at the distinguishing facts in Lytle, the danger had passed where the vehicle was three to four houses down the street. That's not the case here. And in Lytle, there wasn't an officer who was in front of the vehicle that almost got hit. So what is your view of the facts here in terms of when there was no longer danger in relation to when the shots were fired? Are you agreeing that at the moment, at the instant, I won't say the moment, the split second that the shots were fired, that there was or was not danger to the officer? My answer to your question, my time is up. During the entire 22-second episode, the officers appeared that there was danger to them or to the community, and I think each of those shots were justified in that instance. And there's no clearly established law that says it wasn't. All right, you've saved time for rebuttal, Mr. Massoud. Thank you. Mr. James? Thank you, Your Honor. May it please the Court? The Court should affirm the original panel and Judge Kaczmarek were correct that there are material fact disputes in this case about the reasonableness of all the shots fired after the sedan began to move away from both officers and everyone else in the parking lot. And maybe you could start by telling us what is your view of whether LIDL is still fully a good law as it would bind us in this case? LIDL is still binding precedent. It's been applied in cases after Harmon, like the Edwards against Oliver case was applying LIDL against Bexar County in almost the exact same fact pattern. So it's still binding precedent. I think that, of course, the Court needs to be careful that it is applying the law to provide such that an officer would have fair notice of what does LIDL mean to these officers. And so I agree that if you just take a snippet out of LIDL and say this is a general rule, we can apply it to everything, that's not how clearly established law works. But if you look at the facts of what actually happened in LIDL, according to the plaintiffs, because it was a summary judgment standard in LIDL. So the sort of the best case for those plaintiffs, and you look at those facts, and are those analogous enough to give Officer Coburn and Officer McHugh reasonable notice that what they are doing violates that, then it clearly establishes the law for them. And we see that it does. According to the plaintiffs in LIDL, the driver was in a high-speed chase, he was double the speed limit in a busy residential area, he hit another car, and he was wanted for stealing the car he was driving, and I think threatening and having an illegal firearm. He hits another car, and a police officer pulls up next to him, gets out, he starts backing up, the driver backs up towards that police officer, and that is when the officer claims he fired. But then the fleeing vehicle goes further away, three to four minutes, and that is when the plaintiff in that case says the shots were fired. Here we have almost the exact same dispute, except instead of a busy residential area, we have an empty parking lot. The officers claim that they shot Baker in the back earlier in the encounter when they thought that, when they mistakenly thought that Baker might hit Officer Coburn because he was originally in front of the vehicle. Plaintiff's view is that it was seconds later, up to 20 seconds later, after he's on the other side of the parking lot in the driveway about to roll out of the parking lot at two miles an hour. He is less dangerous by far than the driver in LIDL. Now aren't you overlooking the verbal warning? There was not a verbal warning in this case other than show me your hands. And obviously both drivers are aware of the police presence in both cases. In LIDL, it was part of a police pursuit. So I think they're both on notice. The police want them to not run away. I think we would concede that Baker was aware that's what the police wanted. They didn't specifically say that. In this case, was there ever an allegation that the threat that prompted the shots was a threat to others, bystanders, or the public? Or has it always been argued that the only threat justifying the shots was to the officers? The attorneys for the officers have made the argument that there was a threat to the public, but the officers have both testified that the only reason that they were shooting was to protect Officer Coborn. And I can give a record site to that. It's also in our briefing. Mullenix, Plumhoff, and as you just described it, LIDL were high-speed chases. Correct. Yes, Your Honor. Is that relevant? In other words, or would you concede this is still a flight situation? It's not just non-compliance. It is an individual that is not compliant and fleeting. Does that put it in the world of high-speed chases, particularly Mullenix? No. I mean, it's not a high-speed chase, obviously. Coborn runs up to the car, again, to shoot into the car multiple times. So he's on foot and catches up to the car, and you can see that on the video. So it's not literally a high-speed chase. And also, Mullenix factually involves someone calling the police to say, hey, you better stop chasing me or I'm going to shoot you. So that's very different factually. But it's also not as dangerous. Fundamentally, I think LIDL is sort of the end of the line, as dangerous as you can get before you become an immediate threat just because you're fleeing. And so in LIDL, he speeds off to try to go down the residential neighborhood. But we don't yet know, is this going to become a new high-speed chase, or has he just gotten away scot-free? Here, they're going two miles an hour at walking or running speed in a parking lot that's empty. So it's very clear that we have not come close to the Scott against Harris or the Mullenix situation of like this chase itself is so dangerous that it's an immediate threat. And just are we informed at all by the Kavanaugh concurrence in Barnes, which does focus on the difficult predicament of officers in these split-second moments when someone they've said subdue instead accelerates near them? I think that it is acknowledging like there's a possibility that anytime you're doing a traffic stop that a pursuit could start and that it could potentially escalate to a dangerous pursuit. And that was in part to explain why in Barnes the officer leaped onto the side of that car as potentially reasonable or at least not limiting his options once he's put himself in that position. Here, we have been critical of course of Officer Coburn's choice. Well, if you thought this car was so dangerous, why did you run around and wave your gun in the windshield? But that's not the constitutional question. The constitutional question is once that car has now passed you, right now we see what's happening. It's going to do this loop-de-loop in the parking lot and roll away from us. What would you say the clearly established law is for police officers around the country encountering that situation? They're trying to get someone to subdue and respond but that person instead drives away. Is there a clearly established law that every circuit agrees with? Well, I know that of the seven or eight that we've cited in our briefing, when there's a flight situation the officer may not use deadly force unless they have facts showing that there's an immediate threat either to others or to themselves from that vehicle, including the flight of the vehicle itself or as like is in the case in Mullenix that they might retrieve a weapon from the vehicle and then use that to attack people. But we don't have any evidence of that in this case. The officers themselves testified, they both testified that there was no longer an immediate threat at the point where the car is moving away from them after they perceive the left turn. So in McHugh he concedes that at the record on appeal 2550 and Coburn concedes that there's not an immediate threat after it passes him at 2453 in the record. All right, so given the concessions that you just mentioned, what does the summary judgment record show us as to what you say are the disputed issues of the disputes of material fact? For example, but I'm asking you what I'm just suggesting, is there a dispute on whether Coburn fired before the car started moving? Second, is there a dispute on whether the car moved straight ahead toward Coburn before heading to the left? Is there a dispute about what the magistrate judge said that what which is that the dispute was whether Baker used the car as a deadly weapon? Those are three possibilities of disputes as to what happened at the scene. What do you say are the disputed facts that would require the case to go to trial? I, Judge Smith, I would agree with those disputes. I think the first panel kind of identified why what happened before the car moved is still relevant and I think Barnes informs us that we can't ignore what happened before the car moved. The first panel found that was those first shots if they were if he shot as appears on the dashboard before the car moved indicate a constitutional violation that did not violate clearly established law and so that if that's what happened then Baker was trying to flee illegal gunfire and so the officer should have known that and recognized that that's what was happening as opposed to him trying to run them over as they are arguing. But it is a disputed fact and then the use of the car as a weapon or the perception of the use of the car as a weapon is heavily disputed. The officer McHugh, although he admits he can see where Coburn's standing at all times and he admits he waited for the car to pass him such that he could shoot at it from behind, he still contends that it was somehow a threat to Officer Coburn. Whereas our position is that that is logically inconsistent and the ballistics and video evidence shows you know geometrically he could clearly see the car had already passed Coburn when he started firing. So those are all very material disputes and then of course which officer's shots actually hit him and when in that sequence of time did they hit him. Okay and the ones that you've just mentioned I mean the record will tell us this but are these disputes that you identified specifically for the district court? Yes. At the summary judgment stage? Yes your honor and the district court and the earlier panel found all of those were disputed facts. I think it's you know evident in the panel opinion and in Kazimierz's opinion that those are all disputes. Does the video show the final shots or is it just audible we hear them? So the two officers there's Officer Coburn and Officer McHugh. Officer McHugh has his body worn camera on just before things happen but he's covering it up and then Officer Coburn testified that he never turned his on and we don't have that. So the only video where you can see what Officer Coburn is doing during the last shots is the civilian dash camera from a truck across the street. I think that's at three two three two five in the record is that video. And that you can see it but it is I mean it's pixels so it's not clear exactly when he takes all the shots except for two that you can hear picked up on a distant camera. We think he took at least five shots in the driveway area because five of his expended cartridge cases were found right there where the car was when it was leaving the gas station. So that leaves three shots unaccounted for. We don't know exactly where he was when he took them but our retained homicide detective came to the conclusion that it was most likely after you know the sedan is leaving the field of view of the police dash cam that when Coburn would have made the fatal shot if he made the fatal shot including either right there at the very periphery of the dash camera video or when you can only see him on the civilian video and he's walking behind the same. Both of you are excellent which if I'm characterizing their arguments correctly which is the most difficult for you that even accepting Lytle these officers didn't have notice that they couldn't shoot because Lytle had worse as in he was further away three blocks down one two Lytle is on point it said they shouldn't have shot but Lytle is no longer valid in light of Mullenix or three Lytle isn't relevant because Barnes has changed the entire terrain we can't fragment periods of time at all we have to assess the last two shots in light of the earlier more dangerous moment so do you agree those are three different arguments those are three different arguments and I guess which is the hardest for you I think the first one is the hardest one so I'll start I'll start with the last one briefly so Barnes we and and the and the district court and first panel looked at the entire sequence of events including the fact that they knew and they double checked that this was not like a carjacking stolen car this is somebody left the keys in the ignition stolen car and so this is a low-level felony in California and then you know obviously flight which is a felony in Texas so they're looking at the entire encounter up to point of each shot and I completely disagree with the idea that the like for example if it was Coghorn's last shot after he walks back up the hill and turns around and takes another shot at the car if that somehow hit Baker in the back it should not matter what threat existed 23 seconds earlier when the car was stopped at the at the gas station pump like that is enough time Barnes itself says that what matters at the moment of the shot is what matters but would you agree Barnes would say let's imagine what they'd seen earlier was that the child kidnapped a child in the back of the car that would change how you assess the final shot of course right so if we had a totally different case than Barnes could be more important like if they if he was wanted for serial murder and he was suspected to be on the way to his next serial murder instead of just taking a car out of a parking lot then I think Barnes would be bad for me and bad for my clients but that's not our case like we know that he was only suspected of a non-violent felony before this encounter started and so Barnes doesn't hurt Lytle or or my clients in this particular fact pattern and then I think you asked if Lytle was no longer good law and I addressed that already but I it is still good law after Mullinex this court has applied it repeatedly after Mullinex and Plumhoff um and so it is still binding the hardest argument I guess would be they which I didn't see them right in their briefing until the reply which is trying to accept our version of the facts as the magistrate judge and judge Kazimerich found which is if it was in the late in the end of the sequence and they realized that the car was never coming at them and never never going towards Coburn but always turning left then they think Lytle doesn't apply in that situation and that to me that's incorrect like Lytle is a much more dangerous person the fact that it's three to four houses down is not materially different than being across the parking lot at two miles an hour. The dissent in Lytle would have agreed with that position correct? The dissent in Lytle was focused on and I think it was Judge Smith's dissent in Lytle about the flight itself being the risk and so that you know I think in this case we could have won over Judge Smith and Lytle because the flight itself is so much less dangerous from Baker than it is from the driver in Lytle. Lytle hits another car he's going double the speed limit Baker is going two miles an hour he's you know losing to a walking pace right so there is just no danger from the flight itself by the time of the later shots in this case and so applying Lytle to the plaintiff's version of the facts the plaintiff should succeed. If you were to if you were to prevail on this appeal it goes back to the district court it would go to a jury? Yes Judge Smith. What question or questions would you would you have the jury decide? I think the jury. After a trial of course. Yeah the jury would need to decide whether the shooting was objectively reasonable and for each of the officers and then which officers shot which officer is responsible for what damages to Mr. Baker so there were two shots that hit so the jury would ultimately decide which officer killed Mr. Baker and was it a different officer who injured him in for whatever period of time that that injury was relevant and he hadn't passed away from the second shot so the jury would need to assess assess those fact questions and then obviously damages from for the family and for the surviving pain and suffering. The other case that I think is is really important is this Flores against Cydia Palacios case. In that case it's a similar fact dispute right the officer announces he says stop police police stop walks up with a flashlight waves it at the car and then as he is getting close to the car the car turns towards him to enter the roadway and he believes it's about to strike him and then it passes and he opens fire so that's very similar to the shots that were challenging here because although that plaintiff you know made her defense was well I didn't hear the officer over my my music and I didn't notice the flashlight because I don't know what her reason was for that but she claimed she didn't know he was there but from the officer's perspective this is a car that turns towards him as he's given multiple orders to stop and almost hits him and then he opens fire very shortly afterwards so that is the situation that both McHugh and Coburn faced according to our version of the facts which is that they saw the danger saw some danger that they imagined which we disagree that that was ever a danger but regardless that danger passed they both recognized that the car passed officer Coburn it was no longer an immediate threat when it did but they kept shooting they both shot into the back of the car and one of the shots into the back hit Mr. Baker or two of the shots from the back hit Mr. Baker and one killed him so it's it's also analogous to the Flores case and so your time's up are you aware of any instructive informative case applying Barnes including us on remand or even any scholarship that's assessed Barnes I there have been a few cases applying Barnes I don't think that the Fifth Circuit has applied it I didn't notice any in vehicle cases yet thank you all right thank you Mr. James Mr. Massoud for a rebuttal yes your honor I think when you look at at Lytle obviously the the legitimacy of Lytle is questioned but really what you need to look at is distinguishing facts of Lytle versus this case and in the Irwin v Santiago case again very similar facts that opinion distinguished both Lytle and Flores which which was just spoken about and Flores the facts are are completely distinguishable where there wasn't it there was a a lady who parked on the wrong side of the road was moving her car to the other side of the road there was an officer there she didn't realize the officer was there the officer was never in front of the vehicle and he shot anyway that's that's not the situation we have here here we have a you know a stolen vehicle that drives you know toward a toward an officer and and it's it's completely different it's similarly Lytle when you have a vehicle that's three to four houses down is not the same as an officer who is right there at the vehicle and I think I can't remember if it was your question Judge Higginson or yours Judge Smith regarding does the does the video show the final shots and if you look at and he's right if you look at the the civilian video from across the street it does it's very small but if you if you actually zoom in on it and and when you zoom in on it the the undisputed fact is that Mr. Baker was shot twice in the back from the right side coming out his left side and when you look at the video from across the street you see Mr. Coburn who is next to the the driver's side door with his with his arms raised like this shooting his weapon and so I don't want to dispute the facts here but the video is conclusive in that those bullets could not have entered Mr. Baker from his right back side if he was at the driver's side does the video show that Coburn actually runs the vehicle down before the final shots in other words if we're really looking at is the car under Irwin still aiming at them versus cops running after the vehicle to shoot does the video show that Coburn actually chases the car down before final shots are fired yes the video from across the street so that's pretty different than Irwin when the cops are shooting because the car is going towards them yeah and this is when he runs it down and makes those final two shots it's within I think five seconds of of the car leaving the gas pump area as shown on the video and so I mean it's it's not a long time later he immediately runs it down to try to do you have any circuit case where the police is given qualified immunity when they chase down and shoot dead someone I have not found any no and so I think that's why this case there is no clearly established law here in both Lytle and Flores the two cases that the plaintiffs rely on is the plaintiff's burden to find a case to that's clearly it shows that these officers are on notice I think the facts of those cases are just too distinguishable they don't squarely govern and the definitely the way those cases define clearly establishes in too too much of a general term and so we would ask this court to reverse and render in favor of the officers thank you all right thank you Mr. Masu your case is under submission